675 S.E.2d 898

**Mark E. SMITH, Defendant Below, Appellant**

v.

**Wesley CROSS, Plaintiff Below, Appellee.**

**No. 34147.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 28, 2009.

Decided: March 31, 2009.

Donna S. Quesenberry, Esq., Monica N. Haddad, Esq., MacCorkle, Lavender & Sweeney, PLLC, Charleston, WV, Morgantown, WV, for Appellant.

Frank Cuomo, Jr., Esq., Jason A. Cuomo, Esq., Cuomo & Cuomo, PLLC, Wellsburg, WV, for Appellee.

WORKMAN, Justice: [1]

This case is before this Court upon appeal of a final order of the Circuit Court of

1. Pursuant to an administrative order entered March 23, 2009, the Honorable Thomas E.

Brooke County entered December 5, 2007. In that order, the circuit court granted a motion for a new trial filed by the appellee, Wesley Cross, following a jury verdict finding the appellant, Mark Smith, not guilty of negligence in the underlying motor vehicle accident. Mr. Smith argues that the circuit court abused its discretion in granting a new trial. Based upon the parties' briefs and arguments in this proceeding, as well as the relevant statutory and case law, we are of the opinion that the circuit court committed reversible error. Accordingly, we reverse the decision below.

## I.

## FACTS

On August 10, 2004, the appellant, Mark Smith, was traveling west on a two-lane road near Wellsburg, West Virginia. As Mr. Smith was attempting to make a left-hand turn into a nearby driveway, across the east-bound lane, he collided with a vehicle driven by James Yost. Mr. Yost's vehicle was also traveling west and was attempting to pass Mr. Smith's vehicle at the time of the accident. The appellee, Wesley Cross, was a passenger in Mr. Yost's vehicle and suffered numerous personal injuries as a result of the accident.

According to Mr. Smith, he looked into his rearview mirror and side-view mirror prior to attempting the left turn, but did not see Mr. Yost's vehicle. Mr. Smith testified as follows:

A. Well, I pulled out onto Washington Pike and I was driving up to my friend's house. I looked in my rearview mirror when I pulled out onto the highway, because it kind of comes up—you know, people can come flying up from behind you and you not know it until once you get out there. And I was going up and right before I pulled into his driveway, I looked in my middle rearview mirror and then I looked in my side view mirror. I didn't see nobody.

Q. Had you slowed your vehicle just before—

A. I started slowing down when I got towards my friend's house, yes.

Q. And had you begun your turn into the driveway?

A. I started to turn in and I heard skid mark—or I heard squealing, the tires. And then I heard a horn. And at that time that's when we collided.

Q. Where did the collision occur in relationship to the driveway that you were intending to go into?

A. Just right there in front of the driveway.

During trial, Mr. Cross testified that Mr. Yost began passing Mr. Smith at the beginning of a legal passing zone. Conversely, however, Corporal Richard Gibson, of the West Virginia State Police, who was the investigating officer, testified that the collision occurred in a no-passing zone. He explained that the distance from the beginning of the no-passing zone for west-bound traffic, to the point of impact, was 151 feet. Corporal Smith further testified regarding the West Virginia Uniform Crash Report, completed as a result of the accident, and noted that a contributing factor to the accident was the improper passing on the part of Mr. Yost.

In the accident report, Corporal Gibson also noted that another contributing circumstance to the accident was the failure of Mr. Smith to give a proper signal of his impending left-hand turn. At trial, however, the parties were in dispute as to whether Mr. Smith had, in fact, given a proper left-turn signal when he attempted his left-hand turn. Immediately following the accident, Mr. Smith told the investigating officer that he did not believe his turn signal was on because that is what he had been told by Mr. Yost and Mr. Cross. During trial, however, Mr. Smith testified that after all the vehicles had left the scene of the accident, and upon returning to his vehicle and turning it on, he saw that his left-turn signal was still on and blinking. Thus, according to Mr. Smith, any statement he may have made to Corporal Gibson concerning whether or not his turn

McHugh, Senior Status Justice, was recalled for temporary assignment to the Supreme Court of Appeals of West Virginia under the provisions of Article VIII section 8 of the Constitution of West Virginia.

signal was on, would have been made prior to his actual return and starting of his vehicle.

Following the conclusion of the evidence and closing arguments of counsel, the jury was presented with the following question on the verdict form: "Do you find from a preponderance of the evidence that the Defendant, Mark Smith was negligent and his negligence contributed to or was a proximate cause of the accident?" The jury responded in the negative, and rendered a verdict in favor of Mr. Smith. Thereafter, Mr. Cross filed a motion pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, arguing that Mr. Smith was guilty of negligence as a matter of law.[2] Following a September 21, 2007, hearing, the circuit court, in its December 5, 2007, order, granted Mr. Cross' motion for a new trial and set aside the jury's verdict. Specifically, the circuit judge found that Mr. Smith was "guilty of negligence as a matter of law by turning left without looking effectively to see the passing vehicle in which [Mr. Cross] was riding as a non-negligent innocent passenger."

During the September 21, 2007, hearing, the circuit judge explained his reasoning for setting aside the jury's verdict as follows:

THE COURT: Okay. I am quite concerned on the looking effectively part of this case. You know, my recollection of the testimony concerning the looking is pretty much what Mr. Cuomo put in his memorandum. That your client said that he looked in his mirror, he didn't see him, and he had no explanation. So I'm concerned that there is no evidence in the case from which the jury could determine whether he looked effectively or not.

I mean, on the other hand, we did that instruction. That not only do you have to

look, you have to look effectively. So I'm quite concerned, I honestly believed and fully expected that the defendant would say, he must have been in my blind spot or that the arguments would be made that it's common sense that he must have been in the blind spot.[3]

The circuit judge further explained:

And that's where my problem is. When it was just—you know, when it included was the turn signal used or not, the jury made that determination. They very clearly made it. I am concerned about the lack of evidence as to the looking effectively. If he looked, why didn't he see it. You know, he has the obligation to look. He has the obligation not to make the turn until it can be safely made. But, of course, if he doesn't see the vehicle then he—it has fulfilled the totality of it.

I don't think there's any more argument. I think what I'm going to do, I'm going to grant the motion for a new trial on that ground and that ground alone. This is, I think that the jury would have to speculate as to whether he looked effectively because the only evidence in the case about the looking is that he looked in his mirror, he didn't—he said he turned around and looked and that he didn't see it. And he had no explanation as to why he didn't see it.

This appeal followed.

## II.

## STANDARD OF REVIEW

In this case, Mr. Smith argues that the circuit court erred in setting aside the jury verdict and granting Mr. Cross' motion

---

**2.** Rule 59(a) of the West Virginia Rules of Civil Procedure provides, in pertinent part, that a "new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law[.]"

**3.** The instruction presented to the jury with regard to a driver's duty to look effectively, provided, in part, that:

Under West Virginia Code [§] 17C–8–8 as amended, a driver shall not make a left turn on a roadway unless until such movement can be

made with reasonable safety before making such turning movement. Accordingly, you are instructed that if you find Mark Smith did not look effectively to see the James Yost vehicle passing him before attempting a left turn, then you may find Mark Smith negligent. The Court instructs the jury that the driver of a vehicle must keep a proper lookout, and must avail himself of what the lookout discloses so as to prevent injury to himself and others. The duty to maintain a lookout thus involves not only the physical act of looking, but also a reasonably prudent reaction to what may be seen.

for a new trial. In Syllabus Point 3 of *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994), we found that,

> [w]hen a trial judge vacates a jury verdict and awards a new trial pursuant to Rule 59 of the West Virginia Rules of Civil Procedure, the trial judge has the authority to weigh the evidence and consider the credibility of the witnesses. If the trial judge finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, the trial judge may set aside the verdict, even if supported by substantial evidence, and grant a new trial. A trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion.

We also noted that a new trial should rarely be granted and then granted only where it is " 'reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done.' " *Id.* at 124, 454 S.E.2d at 418 (quoting 11 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2803 at 32–33); *see also Morrison v. Sharma,* 200 W.Va. 192, 194, 488 S.E.2d 467, 470 (1997) (same).

In *Maynard v. Adkins,* 193 W.Va. 456, 459–460, 457 S.E.2d 133, 136–137 (1995), we stated that:

> consistent with *Asbestos Litigation* ... is the general principle that the judgment of a trial court in awarding a new trial should be reversed if it is "clearly wrong" or if a consideration of the evidence shows that the case was a proper one for jury determination. *Sargent v. Malcomb,* 150 W.Va. 393, 395, 146 S.E.2d 561, 563 (1966). As stated in syllabus point 4 of *Bronson v. Riffe,* 148 W.Va. 362, 135 S.E.2d 244 (1964): "Where the trial court improperly sets aside a verdict of a jury, such verdict will be reinstated by this Court and judgment rendered thereon."
>
> . . .
>
> *First National Bank in Marlinton* [*v. Blackhurst,* 176 W.Va. 472, 345 S.E.2d 567 (1986) ] in its "abuse of discretion" context, comports with *Asbestos Litigation* and generally with various earlier decisions of this Court concerning the awarding of a new trial. As syllabus point 7 of *Earl T.

*Browder Inc. v. Webster County Court,* 145 W.Va. 696, 116 S.E.2d 867 (1960), states: "The action of the trial court in setting aside a verdict for the plaintiff and awarding the defendant a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the defendant was committed therein." *See also* syl. pt. 6, *Gault v. Monongahela Power,* 159 W.Va. 318, 223 S.E.2d 421 (1976); syl. pt. 6, *Western Auto Supply v. Dillard,* 153 W.Va. 678, 172 S.E.2d 388 (1970); syl. pt. 7, *Brace v. Salem Cold Storage,* 146 W.Va. 180, 118 S.E.2d 799 (1961); syl. pt. 2, *City of McMechen v. Fidelity and Casualty,* 145 W.Va. 660, 116 S.E.2d 388 (1960); syl., *Ward v. Raleigh County Park Board,* 143 W.Va. 931, 105 S.E.2d 881 (1958); syl. pt. 3, *Ware v. Hays,* 119 W.Va. 585, 195 S.E. 265 (1938).

We further explained in *Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 106, 459 S.E.2d 374, 383(1995), that:

> unless error affected the outcome of the trial, a new trial should not usually be granted. In other words, when a trial court abuses its discretion and grants a new trial on an erroneous view of the law, a clearly erroneous assessment of the evidence, or on error that has no appreciable effect on the outcome, it is this Court's duty to reverse.

Likewise, in Syllabus Point 3 of *Neely v. Belk Inc.,* 222 W.Va. 560, 668 S.E.2d 189 (2008), we held that "[t]he action of the trial court in setting aside a verdict and awarding a new trial will be reversed by this Court where it appears that the case, as a whole, was fairly tried and no error prejudicial to the losing party was committed during the trial." With these principles in mind, we now consider the parties' arguments.

### III.

### DISCUSSION

Mr. Smith contends that the circuit court committed reversible error when it set aside the jury's verdict which found that he was not guilty of negligence in the underlying vehicle accident. He further argues that the

circuit court erred in finding him "guilty of negligence as a matter of law by turning left without looking effectively to see the passing vehicle in which [Mr. Cross] was riding as a non-negligent innocent passenger."

Mr. Smith maintains that the situation at hand is factually similar to the case of *Howard's Mobile Homes, Inc. v. Patton*, 156 W.Va. 543, 195 S.E.2d 156 (1973). In *Howard's Mobile Homes*, the plaintiff was traveling in a southerly direction while the defendant was traveling in the same direction behind the plaintiff. As the plaintiff approached her home, which was located on her left, she slowed her vehicle and turned on her vehicle's directional signal indicating a left-hand turn. The plaintiff testified that she looked into her rearview mirror in the car, but did not see the defendant's automobile. She stated that she saw his vehicle for the first time as she began to turn, at which time the front wheels of her vehicle were "about ready to go off the road and into [her] driveway when it was hit." 156 W.Va. at 546, 195 S.E.2d at 158. The defendant then testified that he did not see any turn signal in operation on the plaintiff's vehicle and that he was in the process of passing her when she turned her car to the left. The circuit court awarded summary judgment to the defendant, finding that the plaintiff was "guilty of negligence as a matter of law; and, that her negligence was a proximate cause of the collision." *Id.* On appeal, however, this Court reversed the ruling of the circuit court noting that:

> Here the plaintiff testified that she looked in the rearview mirror but did not see the defendant's vehicle. This gives rise to several questions, which, in the circumstances of this case, can be answered properly only by a jury.

156 W.Va. at 547, 195 S.E.2d at 159. We further explained that:

> In the instant case there is evidence that the plaintiff did look to the rear in an attempt to ascertain whether the turn could be made in safety. Whether or not she looked effectively was determinable by several considerations which should have been submitted to a jury.

*Id.* Thus, in consideration of *Howard's Mobile Homes*, Mr. Smith believes that the circuit court erred in setting aside the jury verdict in his case.

Conversely, Mr. Cross argues that the circuit court correctly set aside the jury's verdict and granted his motion for a new trial as there was no genuine issue of fact as to the negligence of Mr. Smith. He maintains that Mr. Smith improperly made a left turn on an open country highway, without giving a proper turn signal, without looking effectively on a straight stretch of highway in which he had a clear view behind him for hundreds of yards, and then turned left into a passing vehicle. Mr. Cross further states that he was simply an innocent passenger in another vehicle and, thus, not guilty of any negligence.

Mr. Cross believes that Mr. Smith's reliance on *Howard's Mobile Homes* is misplaced and that the principles of law set forth in Syllabus Point 5 of *Adkins v. Minton*, 151 W.Va. 229, 151 S.E.2d 295 (1966), apply to the present case. He further states that there are no real distinguishing material factors different in the instant case that would call for deviating from the *Adkins* decision. Thus, he maintains that Mr. Smith was negligent as a matter of law, and that the circuit court did not abuse its discretion.

We begin our discussion by reviewing our decision in *Adkins*. In Syllabus Point 5 of *Adkins*, we held that:

> If the driver of a forward vehicle making a left turn into a passing lane saw an overtaking vehicle attempting to pass before making the turn and still turned into the left, or passing, lane, and an accident resulted, such driver of the forward or turning vehicle would be guilty of negligence as a matter of law; or if such driver of a forward vehicle looked to the rear when an overtaking vehicle was attempting to pass and did not see the overtaking vehicle, such driver of the overtaken vehicle did not look effectively, which is a requisite in such cases, and would still be guilty of negligence as a matter of law. However, if such driver of the overtaken vehicle had looked effectively and had seen the approaching vehicle before the actual attempt to pass was being executed and made a judgment that a left turn could be

made with safety and had done so and been struck by the passing vehicle, it would result in a question for jury determination as to negligence and contributory negligence of the respective drivers of the two vehicles.

In spite of such unequivocal language, we explained in *Howard's Mobile Homes* that the principles of law set forth in Syllabus Point 5 of *Adkins* were specific to the facts of that particular case. In *Howard's Mobile Homes* we held,

> We are in agreement with the principles of law stated in *Adkins v. Minton, Supra,* as they were applied to the facts of that case. However, the instant case is clearly distinguishable therefrom. The defendant points out that in *Adkins* the driver of the forward vehicle, the plaintiff therein, testified that she gave a signal for a left turn for 150 to 200 feet. As noted in the opinion of that case, however, the plaintiff's (Adkins) testimony was effectively disproved by the physical facts. It was proved that that plaintiff did not look to the rear prior to making a left turn. She was driving an old panel truck which had no rear view mirror, either inside or outside of the vehicle. The truck had no mechanical signal device. After the accident, the plaintiff was unconscious and the window on the driver's side was up, in a closed position. In those circumstances the driver could not have looked to the rear or signaled for a left turn prior to making such turn.

156 W.Va. at 546–547, 195 S.E.2d at 158.

In fully reviewing *Adkins* and *Howard's Mobile Homes,* we find those decisions to be in direct conflict. We further find Syllabus Point 5 of *Adkins* to be inconsistent with our well-established principles of law surrounding negligence, as well as incompatible with the firmly-rooted duties imposed upon a jury in weighing the evidence presented at trial. In particular, a strict reading and application of *Adkins* necessarily removes from the jury any ability to assess the facts in a case where a driver made a left turn and was involved in an accident with an overtaking vehicle, regardless of the underlying circumstances. We believe that Syllabus Point 5 of *Adkins* creates an impossible burden to overcome by any party to a lawsuit involving similar factual circumstances as those in the present case.

■ As we held many years ago, "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner or person." Syllabus Point 1, *Dicken v. Liverpool Salt & Coal Co.,* 41 W.Va. 511, 23 S.E. 582 (1895). Moreover, "Negligence is conduct unaccompanied by that degree of consideration attributable to the man of ordinary prudence under like circumstances." Syllabus Point 4, *Patton v. City of Grafton,* 116 W.Va. 311, 180 S.E. 267 (1935).

■ As we said in *Honaker v. Mahon,* 210 W.Va. 53, 58, 552 S.E.2d 788, 793 (2001), "[i]t is axiomatic in the context of negligence lawsuits that a party has a duty to exercise 'due care.' In other words, people are required to exercise the same degree of care which would be exercised by a reasonably prudent person in like circumstances." We further explained:

> Under principles of ordinary negligence, people are not required to guarantee, 'ensure' or otherwise take extraordinary caution to make certain that their actions will be accomplished safely. Instead, each person is required to act only as an ordinary, prudent person:
>
>> This criterion—the man of ordinary prudence—is neither an automaton nor an exceptional man, but an ordinary member of the community. Being an ordinary person, the law makes allowance for mere errors in his judgment and does not visualize him as exercising extraordinary care. Normality is the quintessence of this characterization. Syllabus Point 6, *Patton v. City of Grafton,* 116 W.Va. 311, 180 S.E. 267 (1935).
>
> Our jurisprudence holds that Mr. Honaker was charged with exercising the care of a reasonable prudent person under similar circumstances. He was not charged with acting as an 'automaton' or as an 'exceptional man,' ensuring his safety or that of any other person.

210 W.Va. at 58, 552 S.E.2d at 794. We further explained in Syllabus Point 1 in *Bird-*

*sell v. Monongahela Power Co., Inc.*, 181 W.Va. 223, 382 S.E.2d 60 (1989), that:

" 'Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.' Syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964)." Syllabus Point 3, *Dawson v. Woodson*, 180 W.Va. 307, 376 S.E.2d 321 (1988).

■ In *Litten v. Peer*, 156 W.Va. 791, 797, 197 S.E.2d 322, 328 (1973), we held that "[i]t has always been the policy of this Court to protect each litigant's day in court." It is equally true, of course, that " ' "[w]hen a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the evidence or without sufficient evidence to support it." Point 4, Syllabus, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894.' Syllabus Point 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963)." Syllabus Point 5, *Toler v. Hager*, 205 W.Va. 468, 519 S.E.2d 166 (1999). Moreover, in *Neely*, 222 W.Va. at 571, 668 S.E.2d at 199, *supra*, we explained that "[a]lthough the circuit court does have some role in determining whether there is sufficient evidence to support a jury's verdict, it is not the role of the circuit court to substitute its credibility judgments for those of the jury or to assume the jury made certain findings because they did not believe evidence presented on other issues."

■ The circuit court's role in determining whether sufficient evidence exists to support a jury's verdict was set forth in Syllabus Point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1984), wherein we held:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

In addition, this Court has previously held that:

"In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Syllabus Point 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963).

Syllabus Point 6, *Toler, supra*.

■ Furthermore, the authority given to the circuit court to weigh evidence and consider credibility in Syllabus Point 3 of *In re State Public Building Asbestos Litigation, supra*, "does not obviate the essential role of the jury in resolving conflicting evidence and credibility issues." *Pauley v. Bays*, 200 W.Va. 459, 464, 490 S.E.2d 61, 66 (1997). This Court has "consistently held that the function of the jury is to weigh the evidence with which it is presented and to arrive at a conclusion regarding damages and liability. As an element of that vital task, the jury must analyze the evidence and determine the credibility to be assigned to various components of that evidence." *Pauley*, 200 W.Va. at 464, 490 S.E.2d at 66. Likewise, we have invariably maintained that " ' "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting." Point 3, Syllabus, *Long v. City of Weirton*, [158] W.Va. [741], (1975) 214 S.E.2d 832.' Syllabus Point 2, *Bourne v. Mooney*, 163 W.Va. 144, 254 S.E.2d 819 (1979)." Syllabus Point 2, *Toler, supra*.

In accordance with the aforementioned, we find that *Adkins* is in direct conflict with the longstanding duties imposed upon a jury. Accordingly, Syllabus Point 5 in *Adkins v. Minton*, 151 W.Va. 229, 151 S.E.2d 295 (1966), is expressly overruled because it is manifestly incompatible with the essential role of a jury in resolving conflicting evidence

and credibility issues, and weighing the evidence presented.

■■■ With this in mind, we now review the circuit court's decision to grant a new trial to Mr. Cross. At the outset, we note that in resolving the underlying questions in favor of Mr. Smith, the party for whom the verdict was returned, the jury's verdict may be explained by assuming that they found that Mr. Smith did slow his vehicle and signal prior to making his left-hand turn, that Mr. Yost was passing Mr. Smith's vehicle in a no passing zone, and that Mr. Smith did look effectively before attempting his left-hand turn and, thus, was not negligent. These determinations were clearly jury issues and the finding that Mr. Smith was not negligent was consistent with his testimony at trial. He testified that he slowed his vehicle prior to attempting the turn, that he looked in his rearview and side-view mirrors, and that he did not see Mr. Yost's vehicle prior to the collision. We see no evidence that "prejudicial error has crept into the record or that substantial justice has not been done[ ]" with regard to the jury's verdict. *In re State Public Building Asbestos Litigation*, 193 W.Va. at 124, 454 S.E.2d at 418. Likewise, we do not believe that the jury's verdict was "plainly contrary to the evidence or without sufficient evidence to support it." Syllabus Point 5, *Toler, supra.* Equally important, there is no evidence that the verdict was "against the clear weight of the evidence, [was] based on false evidence or will result in a miscarriage of justice[.]" Syllabus Point 3, *In re State Public Building Asbestos Litigation, supra.* The record does, however, demonstrate that the jury properly weighed the evidence and arrived at the conclusion that Mr. Smith was not negligent in the underlying vehicle accident.

Accordingly, after thoroughly reviewing the record, and considering all of the parties' arguments, we believe that the circuit court improperly set aside the jury's verdict and ordered a new trial. Thus, we reverse the circuit court's December 5, 2007, order, which granted a new trial in the underlying civil action and we remand this case to the circuit court to enter an order consistent with this opinion.

## IV.

### CONCLUSION

For the reasons set forth above, the December 5, 2007, final order of the Circuit Court of Brooke County is reversed, and this case is remanded to the circuit court with directions to enter an order reinstating the jury's verdict.

Reversed and Remanded with Directions.