# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**E.B.,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0090** (Cabell County 14-C-328)

**West Virginia Regional Jail**
**and Correctional Authority**
**and Joseph Delong,**
**Defendants Below, Respondents**

**AND**

**E.B.,**
**Plaintiff Below, Petitioner**

**vs) No. 16-0092** (Cabell County 14-C-328)

**St. Mary's Medical Center, Inc., d/b/a/**
**St. Mary's Medical Center,**
**Defendant Below, Respondent**

**FILED**

**January 27, 2017**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner E.B., by counsel Jay C. Love, appeals two orders of the Circuit Court of Cabell County, each entered on January 8, 2016, granting summary judgment in favor of respondents. Respondents West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") and Joseph Delong, WVRJCFA's executive director, appear by counsel William E. Murray and Natalie N. Matheny. Respondent St. Mary's Medical Center, Inc. ("St. Mary's") appears by counsel Marc E. Williams, Robert M. Sellards, Thomas M. Hancock, and Sarah B. Massey. Though petitioner initiated these appeals with separate notices, we consolidate the matters for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

I.

1

While serving a term of incarceration in the Western Regional Jail, petitioner suffered an injury in March of 2013, for which she was transported to St. Mary's. Doctors admitted her for observation. During her stay at the hospital, petitioner was guarded by several individual correctional officers, including Correctional Officer J.M. ("the correctional officer" or "J.M."), an employee of Respondent WVRJCFA. After discharge from St. Mary's and upon her return to the regional jail, petitioner reported that she had been raped by the correctional officer during his sixteen-hour shift while at the hospital. In response to her accusation, jail officials returned petitioner to St. Mary's for administration of a rape kit. The correctional officer later admitted to having engaged in consensual sexual relations with petitioner, and he pled guilty to the felony offense of imposition of a sexual act upon an incarcerated person in violation of West Virginia Code § 61-8B-10. Petitioner denies that the intercourse was consensual. It is undisputed that petitioner did not report an assault to any employee of St. Mary's during her initial hospitalization.

Petitioner filed a civil complaint regarding the alleged assault in 2014. The complaint superficially sets forth eighteen counts, described to the apex of our understanding as follows: breach of the duty of care by St. Mary's and WVRJCFA (Count I); breach of the duty of care to provide reasonable supervision by Respondent Delong and WVRJCFA (Count II); breach of the duty to "take reasonable precaution against harmful third[-]party conduct on its premises that it could reasonably anticipate" by St. Mary's (Count III); breach of the duty to "take reasonable precaution against harmful third[-]party conduct on its premises or at its functions that it could reasonably anticipate" by WVRJCFA (Count IV); misrepresentation and failure to institute reasonable procedures and rules by Respondent Delong and WVRJCFA (Count V); intentional causation of severe emotional distress and bodily harm by WVRJCFA (Count VI); outrageous conduct by St. Mary's resulting in severe emotional distress and bodily harm (Count VII); failure of the duty to protect by all respondents (Count VIII); breach of the duty to protect "from the known and substantial risk of physical abuse from correctional officers" by all respondents (Count VIII) (sic); breach of the duty to protect "from the known and substantial risk of physical abuse as well as a duty to provide a reasonably safe environment . . . to be medically treated . . ." by St. Mary's (Count IX); breach of the "duty to intervene" by St. Mary's (Count X); breach of the "duty of care . . . pursuant to the Constitutions, statutes and common laws of [West Virginia] and the United States of America" by WVRJCFA and Respondent Delong (Count XI); breach of the duty to "use due care in the supervision, training, and retention of correctional officers" by WVRJCFA and Respondent Delong (Count XII); breach of the duty of care by St. Mary's (Count XIII); deliberate indifference by Respondent Delong (Count XIV); violation of the West Virginia Constitution, Article 3, Section 5, right to be free from cruel and unusual punishment (Count XV) by WVRJCFA and Respondent Delong; material misrepresentation by St. Mary's (Count XVI), and violation of petitioner's civil rights pursuant to 42 U.S.C. § 1983 (Count XVII). Within her recitation of several of the aforementioned counts, petitioner asserts that the conduct described therein resulted in the violation of her "established rights," including, for example, "the right to bodily integrity, the right to be free from the use of excessive force, the right to be free from cruel and unusual punishment, [the] right to be incarcerated in a reasonably safe environment, and the right to be treated in a medically safe environment."

2

A period of discovery was conducted.[1] Thereafter, respondents filed motions for summary judgment. The court granted the motions as described above, finding that Respondent WVRJCFA was not vicariously liable for J.M.'s criminal act, inasmuch as J.M. was not acting within the scope of his employment; that petitioner failed to offer any evidence that Respondents WVRJCFA or Respondent Delong acted with deliberate indifference in the formulation of WVRJCFA policy; and that Respondent St. Mary's owed petitioner no duty to protect her from an unforeseen criminal act committed by an individual not employed by St. Mary's. The court's findings related to Respondents WVRJCFA and Delong supported the court's conclusion that those respondents were entitled to qualified immunity.

II.

With respect to the circuit court's grant of summary judgment to Respondent St. Mary's, petitioner asserts the following thirteen assignments of error: (1) the court erred in finding that respondent owed petitioner no duty to protect her from an assault by the guard assigned by Respondent WVRJCFA to guard her during her hospitalization; (2) the circuit erred in finding that there was no evidence that respondent breached a duty to maintain a safe environment; (3) the circuit court erred in applying *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000), to the facts of this case, while ignoring *Smith v. Cross*, 223 W.Va. 422, 675 S.E.2d 898 (2009); (4) the court erred in finding the correctional officer's act was the sole cause of petitioner's injury; (5) the court erred in finding that Respondent WVRJCFA has the sole control of and discretion in the guarding of petitioner during her hospitalization; (6) the court erred in finding that Respondent WVRJCFA had the sole control of and discretion in determining the appropriate guarding and restraint procedures employed during petitioner's hospitalization; (7) the court erred in finding that petitioner sought to impose a duty on respondent to "police the police"; (8) the court erred in finding that respondent had neither the right nor the duty to direct the guarding of petitioner; (9) the court erred in finding that petitioner offered no evidence supporting her allegation that an assault was a natural and foreseeable result of allowing her to be left alone in a hospital room with the correctional officer; (10) the court erred in finding that the correctional officer's act was unforeseeable; (11) the court erred in "not applying the two exceptions to the general rule that a person has no duty to protect others from the criminal activity of a third party;" (12) the court failed to order the disclosure of certain of respondent's records pertaining to allegations of sexual assault; and (13) the court erred in failing to address "the remaining counts in the complaint."

Petitioner asserts the following fourteen assignments of error concerning the circuit court's grant of summary judgment to Respondents WVJRCA and Delong: (1) the court erred in applying the doctrine of qualified immunity; (2) the court erred in finding that Respondent WVRJCFA took reasonable measures to guarantee petitioner's safety; (3) the court erred in

---

[1] We are unable to ascertain a more definitive timeline because the parties failed to include in the appendix record on appeal "[a] certified copy of the complete docket sheet in the case obtained from the clerk of the circuit court" as required by Rule 7(d)(7) of our Rules of Appellate Procedure. Because no party has informed us otherwise, we assume that the parties had full discovery on all issues.

dismissing Count 11 of her complaint; (4) the court erred in finding that petitioner presented no evidence that Respondent Delong intentionally, or with deliberate indifference, failed to create a policy ensuring the same-sex guarding of, or the assignment of two guards to, hospitalized inmates; (5) the court erred in finding that Respondent "Delong had no reason to believe that . . . lack of policy [regarding same-sex guarding or the assignment of two guards] does not, in and of itself, violate any clearly established right;" (6) the court erred in ruling that there is no evidence that the correctional officer acted within the scope of his employment "when he committed the crime at issue"; (7) the court erred in finding that there was no evidence that Respondent WVRJCFA acted with supervisory indifference or tacit authorization of the correctional officer's conduct; (8) the court erred in finding that Respondent WVRJCFA did not violate petitioner's clearly established or constitutional rights; (9) the court erred in finding that Respondent WVRJCFA is not a "person" for purposes of analysis of 42 U.S.C. § 1983; (10) the court erred in finding that petitioner's constitutional rights were not violated by Respondent WVRJCFA's "failure" to create a policy requiring the same-sex guarding of, or the assignment of two guards to, a hospitalized inmate (11) the court erred in finding that petitioner offered no evidence supporting her contention that Respondent WVRJCFA "acted with deliberate indifference by showing that the supervisory official's failure to create a two-guard or same-sex-only policy caused or led to the 'natural and foreseeable' injuries that [petitioner] suffered as a result of [the correctional officer's] criminal activities"; (12) the court erred in finding that there was no genuine issue of material fact; (13) the court erred in finding that petitioner offered no evidence supporting her argument that respondents' "failure to change the existing policy" violated her constitutional rights; and (14) the court erred in granting respondents' motions for summary judgment.

Petitioner's many challenges relate to the circuit court's grant of two motions for summary judgment. "This Court reviews *de novo* the denial of a motion for summary judgment, where such a ruling is properly reviewable by this Court." Syl. Pt. 1, *Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807 (2002). Relative to this appeal, we recognize that:

> [b]ecause appellate review of an entry of summary judgment is plenary, this Court, like the circuit court, must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor. An appellate court is not restricted to the circuit court's reasoning but can affirm or reverse the entry of summary judgment on any independently sufficient ground.

*Asaad v. Res–Care, Inc.*, 197 W.Va. 684, 687, 478 S.E.2d 357, 360 (1996) *accord Gray v. Boyd*, 233 W.Va. 243, 248, 757 S.E.2d 773, 778 (2014).

In addition, because the circuit court rested its grant of summary judgment on immunity grounds, we note that:

> [t]he ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the

4

immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.

Syl. Pt. 1, *Hutchison v. City of Huntington*, 198 W.Va. 139, 479 S.E.2d 649 (1996). Finally, we necessarily wade into the waters of federal law to reach our qualified immunity ground. Our reasons for doing so are detailed in *State v. Chase Securities, Inc.*, 188 W.Va. 356, 359-60, 424 S.E.2d 591, 594-95 (1992):

First, litigation directed at state officials is most frequently brought pursuant to 42 U.S.C. § 1983, which creates a remedy for violation of federal rights committed by persons acting under color of state law. The interpretation of this statute by the federal courts has resulted in a substantial body of law regarding immunity for public officials. This law has developed by considering common law immunity concepts, as the United States Supreme Court observed in *Owen v. City of Independence*, 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673, 685 (1980):

"In each of these cases, our finding of §1983 immunity 'was predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.' *Imbler v. Pachtman*, [424 U.S. 409], at 421 [96 S.Ct. 984, 990, 47 L.Ed.2d 128, 138 (1976)]. Where the immunity claimed by the defendant was well established at common law at the time §1983 was enacted, and where its rationale was compatible with the purposes of the Civil Rights Act, we have construed the statute to incorporate that immunity."

*See also Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Thus, these precepts are compatible with our common law traditions.

Another reason for utilizing the federal law is the holding in *Howlett v. Rose*, 496 U.S. 356, 110 S. Ct. 2430, 110 L.Ed.2d 332 (1990), that in Section 1983 litigation a state may not create an immunity for state officials that is greater than the federal immunity. The Court in *Howlett* pointed out that Section 1983 suits could be brought in state courts and that under the Supremacy Clause, federal substantive law must be applied in such actions. In *Howlett*, the Florida court had held that the state's absolute immunity from suit applied to state governmental entities in Section 1983 actions. In rejecting this contention, the Supreme Court stated:

"If the District Court of Appeal meant to hold that governmental entities subject to §1983 liability enjoy an immunity over and above those already provided in §1983, that holding directly violates federal law. The elements of, and the defenses to, a federal cause of action are defined by federal law." 496 U.S. at 375, 110 S.Ct. at 2442, 110 L.Ed.2d at 353. (Citations omitted). *See also*

5

> *Felder v. Casey*, 487 U.S. 131, 108 S. Ct. 2302, 101 L.Ed.2d 123
> (1988); *Martinez v. California*, 444 U.S. 277, 100 S. Ct. 553, 62
> L.Ed.2d 481 (1980). Thus, it would seem appropriate to construct,
> if possible, an immunity standard that would not conflict with the
> federal standard.
>
> Furthermore, in several instances, we have used federal official immunity law. . . .
>
> [For example,] analagous, from a substantive law standpoint, is *Bennett v.*
> *Coffman*, 178 W.Va. 500, 361 S.E.2d 465 (1987), which involved a civil action
> for damages against a police officer. We set out in the Syllabus, in part, of
> *Bennett*, this general test which comes from *Harlow v. Fitzgerald*, 457 U.S. 800,
> 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982):
>
> > "Government officials performing discretionary functions are
> > shielded from liability for civil damages insofar as their conduct
> > does not violate clearly established statutory or constitutional
> > rights of which a reasonable person would have known."

We reduce petitioner's arguments to their essence and evaluate her assignments of error according to these precepts.

III.

First, we consider petitioner's assignments of error concerning the grant of summary judgment to St. Mary's. Nearly all of these assignments of error (1) attack the circuit court's ultimate findings that respondent neither owed nor breached a particular duty to petitioner, or (2) attack the rationale supporting those findings. As the circuit court aptly noted, "the threshold question in all actions in negligence is whether a duty was owed." *See Strahin v. Clevenger*, 216 W.Va. 175, 183, 603 S.E.2d 197, 205 (2004). We further note that the circuit court appropriately addressed the question. "The determination of whether a defendant in a particular case owes a duty to the plaintiff is not a factual question for the jury; rather the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law." Syl. Pt. 5, *Aikens v. Debow*, 208 W. Va. 486, 488, 541 S.E.2d 576, 578 (2000).

The circuit court concluded that St. Mary's owed no duty to protect petitioner from a sexual assault by the correctional officer because it could not foresee the correctional officer's actions, and a "person usually has no duty to protect others from the criminal activity of a third party. . . ." *See Miller v. Whitworth*, 193 W.Va. 262, 266, 455 S.E.2d 821, 825 (1995). Petitioner's first eleven assignments of error concerning the grant of summary judgment to Respondent St. Mary's strike at this conclusion, and we consider all of those assignments under a

6

single umbrella.[2] The question before us is whether the circuit court correctly concluded that respondent neither owed nor breached a duty to petitioner. We find that the circuit court reached the correct conclusion, and settled principles of law preclude imposing tort liability upon the hospital for the unforeseeable crime committed by the correctional officer. In so finding, we agree with the circuit court that respondent had no duty to "police the police."

Our analysis begins with the foundation of the circuit court's finding: that respondent had no duty to protect petitioner from the criminal activity of a third party. Petitioner argues that the "special relationship" existing between her and St. Mary's precludes application of this tenet. *See Miller*, 193 W.Va. at 266, 455 S.E.2d at 825. The crux of the argument appears to be that, according to *Smith v. Cross*, 223 W.Va. 422, 675 S.E.2d 898 (2009), the circuit court was obligated to allow a jury to evaluate the question of negligence in light of whether a duty of care was created because St. Mary's was entrusted with a "physically helpless" female who was "subject to confinement." We disagree that the assertion of these facts removes the question of duty from the purview of the circuit court.

We have explained that a "special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus." *Aikens*, 208 W.Va. at 499, 541 S.E.2d at 589. Petitioner offered no evidence that an assault by a correctional officer in a hospital setting was foreseeable. Petitioner's own expert witness testified that sexual assault of a female inmate by a male correctional officer is not expected, but is a "possibility." An act of sexual misconduct committed by a correctional officer with no known history of such misconduct is certainly possible, as this case demonstrates. However, the mere possibility of improper conduct is insufficient to impose liability on respondent hospital where, as explained in *Aikens*, liability for negligence arising from a special relationship has been determined by what is probable, not what is possible. Under the circumstances and evidence presented to us, the possibility that a correctional officer with no known history of sexual misconduct would assault the inmate-patient under his charge is too remote to be considered legally foreseeable. Thus, we find no error in the circuit court's determination that St. Mary's owed no particular duty to petitioner in this regard, and having found no established duty, we find no error in the circuit court's determination that there was no breach. Accordingly, we find no merit in petitioner's first through eleventh assignments of error related to the grant of summary judgment to St. Mary's.

There are two remaining assignments of error concerning St. Mary's. Petitioner supports her final assignment of error (her twelfth, wherein she states that "the circuit court erred in not addressing the remaining counts in the [c]omplaint") with a single argumentative statement: "Plaintiff incorporates by reference, herein, the cited evidence and the arguments made in the preceding sections of this brief." We decline to address petitioner's assignment of error for lack of any meaningful supporting argument.[3] As we have repeatedly cautioned litigants, "'[a]

---

[2] In doing so, we note that petitioner's arguments supporting several of her assignments of error "incorporate by reference" her arguments supporting other assignments of error, often with little or nothing more offered.

(continued . . .)

skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . .' *State, Dep't of Health & Human Res. v. Robert Morris N.*, 195 W.Va. 759, 765, 466 S.E.2d 827, 833 (1995) (citation omitted)." *State v. White*, 228 W.Va. 530, 547, 722 S.E.2d 566, 583 (2011). Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, the argument section of the petitioner's brief "must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal." This Court previously has found issues asserted on appeal to have been waived as a result of a petitioner's failure to comply with Rule 10(c)(7). *See, e.g., Evans v. United Bank, Inc.*, 235 W.Va. 619, 629, 775 S.E.2d 500, 510 (2015) (observing that petitioners' argument failed to meet requirements of Rule 10(c)(7), and concluding, therefore, "the issue has been waived for purposes of appeal."). For the same reasons, we find no merit in petitioner's argument with regard to her penultimate assignment of error (her eleventh, wherein she states that the circuit court wrongfully denied her access to St. Mary's reports of sexual assault).[4] The circuit court did not abuse its discretion in this regard.

IV.

A.

We turn our attention to petitioner's fourteen assignments of error addressing the grant of summary judgment to Respondents Delong and WVRJCFA. These assignments of error, much like those asserted as to St. Mary's, are threads in a common yarn. Each in some manner attacks the circuit court's ultimate determination that these respondents enjoy qualified immunity with respect to petitioner's allegations. We recently reiterated:

> "In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va. Code § 29–12A–1 *et seq.*, and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer." Syl. Pt. 6, *Clark v. Dunn*, 195 W.Va. 272, 465 S.E.2d 374 (1995).

---

[3] For that matter, we decline to address this assignment of error for lack of any meaningful identification of the asserted circuit court failure. That is to say, petitioner has not identified any specific cause of action not addressed by the circuit court.

[4] The circuit court reviewed, in camera, certain documents provided to it by St. Mary's; determined that those documents did not "contain any allegations of a similar nature to the facts of the pending litigation"; then ordered those documents filed in the circuit court, under seal. Petitioner filed no motion and took no action to make those documents a part of the appendix record on appeal or to otherwise make them available for the Court's review.

Syl. Pt. 7, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W.Va. 492, 766 S.E.2d 751, 756 (2014). Furthermore,

> [t]o the extent that governmental acts or omissions which give rise to a cause of action fall within the category of discretionary functions, a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive in accordance with *State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992). In absence of such a showing, both the State and its officials or employees charged with such acts or omissions are immune from liability.

*Syl. Pt. 11, A.B.*, 234 W.Va. at ___, 766 S.E.2d at 756.

## B.

Petitioner asserts that her claims are not grounded in mere negligence but, instead, concern a number of state and federal constitutional violations. We greatly understate the matter in observing that petitioner's complaint is vague regarding the asserted constitutional violations. To the contrary, she tersely declares that her "federal and state constitutional rights were clearly violated[,] including but not limited to her right to be free from excessive force, her right to bodily integrity, her right to be free from assault[,] and her right to be free from cruel and unusual punishment." Indeed, this terse declaration appears as a dormant afterthought in counts describing various breaches of duty and intentional infliction of emotional distress.[5] Only in the final count of her complaint does she briefly assert that the actions of the correctional officer, "while acting under the color of law, deprived [her] of . . . her right[s] to bodily integrity, . . . to be free from the use of excessive force, . . . to be free from assault, and . . . to be free from the use of cruel and unusual punishment. . . ."[6] The deprivation of these constitutionally-protected

---

[5] While our jurisprudence leads our courts to construe a complaint in the light most favorable to the plaintiff, we caution litigants that

> liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading. As stated in Lugar and Silverstein, *West Virginia Rules of Civil Procedure* (1960) at 75: "Simplicity and informality of pleading do not permit carelessness and sloth: the plaintiff's attorney must know every essential element of his cause of action and must state it in the complaint."

*Sticklen v. Kittle*, 168 W.Va. 147, 164, 287 S.E.2d 148, 157–58 (1981). The virtues of a well-pleaded complaint are set forth in Rule 8(e) of the West Virginia Rules of Civil Procedure: each averment of a pleading shall be "simple, concise and direct."

[6] This final count appears to state a claim against the correctional officer alone. However, because petitioner summarily stated in the jurisdictional statement at the outset of her complaint (continued . . .)

rights, she asserts, constitutes a violation of 42 U.S.C. § 1983.[7] Having assessed petitioner's protracted complaint, we note that while petitioner argues that she has pled more than negligence, some of her claims are, in fact, simple assertions of negligence. Those claims, as explained in syllabus point 7 of *A.B.*, are barred as to both respondents where Respondent Delong acted in the scope of his employment. Petitioner recognizes in her brief that Respondent Delong testified that the development of policy falls within the duties of his position. We find that both respondents enjoy qualified immunity on these issues.[8]

---

(more than thirty pages prior to the count setting forth the civil rights invocation) that "[f]or the purposes of 42 [U.S.C. §] 1983 and [f]ederal [c]onstitutional [c]laims in this [c]omplaint, [Respondent] Delong is being sued in his individual capacity[,]" we read the final count of the complaint most liberally.

[7] We explained in *Hutchison v. City of Huntington*, 198 W.Va. 139, 151-52, 479 S.E.2d 649, 661-62 (1996):

> Title 42, U.S.C.A., § 1983 provides in pertinent part:
>
> > "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."
>
> This civil rights statute does not create substantive rights, but merely provides a claim for relief for rights elsewhere secured. Thus, § 1983 claims must specifically allege a violation of the constitution or "laws" of the United States. *See Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S. Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). In order to recover damages under § 1983, a plaintiff must show that (1) "the conduct complained of was committed by a *person* acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

(Emphasis in original.)

[8] Petitioner argues that WVRJCFA is vicariously liable for various actions of the correctional officer. She argues, for example, that WVRJCFA "is vicariously liable for [the correctional officer's] decision to leave the door closed to [petitioner's hospital] room[,]" because that decision was within the scope of the correctional officer's employment. We explicitly reject petitioner's attempt to mine the depths of the correctional officer's criminal activity to extract some minute gem she would polish and carve into an employment-related endeavor. The correctional officer committed, at least, the felony offense of having sexual (continued . . .)

## C.

We turn, then, to the remainder of petitioner's claims—that is, those wherein she purports to have pled a cause of action for which respondents cannot claim immunity—concerning constitutional and civil rights violations. The circuit court considered petitioner's assertion that respondents violated her civil rights through their actions or inactions related to policy-making functions. Petitioner particularly advocates a "two-guard" policy, and argues that she was harmed because respondent failed to institute a policy that would have required two guards in her presence while she sought treatment at St. Mary's, much like a similar policy implemented within the WVRJCFA facility itself. Petitioner further argues that Respondent Delong's deliberate indifference to the need for such a policy evidences a constitutional violation that eradicates his qualified immunity protection.

As noted above, some counts of petitioner's complaint vaguely reference various constitutional violations. Likewise, the final count of her complaint—that in which she asserts that her civil rights were violated—names the Fourth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution, again without explanation, and her brief is somewhat conclusory with regard to the connection between respondents' acts or omissions and her assertion of these various rights. We begin, then, with the most immediate and broadest point of clarity in the whole of petitioner's claims, wherein she argues that her civil rights were violated in the denial of her constitutional rights, therein asserting a claim pursuant to 42 U.S.C. § 1983.

We have explained that "neither a state nor its officials acting in their official capacities are 'persons' under §1983" (*see Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and the circuit court acknowledged as much in its order. Moreover, we have clarified that

> [a]s it stands today, the issue of supervisory liability in connection with an alleged civil rights violation is clear: there is none. Under the holding of *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a supervising police officer may not be held liable for the wrongful actions of his or her subordinate officers in connection with an alleged civil rights violation because a supervising police officer is only liable for his or her own conduct and not that of his/her subordinates.

---

relations with an incarcerated person. All activity related to that contemptible endeavor—yes, including the closing of the door, presumably done in order to initiate the deed—undertaken to further the criminal act was outside the scope of the correctional officer's employment. Alternatively, should the Court review each step in an isolated universe, we would find that it was not the closing of the door that harmed petitioner.

*Robinson v. Pack*, 223 W.Va. 828, 837, 679 S.E.2d 660, 669 (2009).[9] On these bases, we specifically find that WVRJCFA was properly found to have qualified immunity, and that Respondent Delong is not liable for the criminal act of the correctional officer.

D.

Having significantly narrowed our focus, we delve into the kernel of petitioner's argument: that Respondent Delong failed to institute a policy assigning multiple guards or, alternatively, a female guard, while petitioner was away from the regional jail facility at which she was an inmate, and that this failure was based on Respondent Delong's deliberate indifference to the needs of WVRJCFA inmates.[10]

Again we note that petitioner's elucidation of her constitutional claims is sparse[11], but the support that she does offer tends toward her claims that her Eighth Amendment and Fourteenth Amendment rights were violated. Our own jurisprudence explains the connection:

> The United States Fourth Circuit Court of Appeals has decided that inmates have an actionable right against prison officials for "confinement in a prison where violence and terror reign." *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889, 890 (4th Cir. 1973); *Hite v. Leeke*, 564 F.2d 670, 672-73 (4th Cir. 1977). *Woodhous* held that prison officials can violate prisoners' Eighth and Fourteenth Amendment rights by not providing adequate protection against inmate assault or violence. Certainly, if a state must take responsibility for inmate

---

[9] There is no allegation that Respondent Delong was aware that the subordinate correctional officer was engaged in conduct that would lead to a constitutional injury.

[10] We note that petitioner further asserts her "established right" to such a policy through state law:

> Protection. Inmates shall be protected from personal abuse, corporal punishment, personal injury, disease, property damage and harassment. In instances where physical force or disciplinary detention is required, only the least restrictive means necessary to secure order or control shall be used. Administrative segregation shall be used to protect inmates from themselves or other inmates.

West Virginia Code of State Rules § 95-1-15.9. She also refers to WVRJCFA Policy No. 9029 which calls, in part, for "specific precaution . . . to assure the safety of the inmates . . ." but does not specifically require same-sex guarding or guarding by multiple correctional officers.

[11] For example, petitioner offers one argument heading that claims her "right not to be assaulted or battered[,]" and offers in support only, "[s]ee *Dingle v. District of Columbia*[,] 571 F.Supp.2d 87,97 (D.D.C. 2008)" with no discussion of the manner in which that case applies to the circumstances before us. She offers claims of violation of the state constitution, similarly supported. We discern only general references to the West Virginia Constitution in petitioner's complaint.

12

violence toward their fellow prisoners, it must be responsible for its own violence visited upon inmates by its employees.

*Harrah v. Leverette*, 165 W. Va. 665, 674-75, 271 S.E.2d 322, 328-29 (1980).

Petitioner argues that respondents were required to "take reasonable measures to guarantee the safety of the inmates" pursuant to *Farmer v. Brennan*, 511 U.S. 825, 844–45, 114 S. Ct. 1970, 1982–83, 128 L. Ed. 2d 811 (1994). In the context of Eighth Amendment claims, the United States Supreme Court clarified therein:

> Because . . . prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment, it remains open to the officials to prove that they were unaware even of an obvious risk to inmate health or safety. That a trier of fact may infer knowledge from the obvious, in other words, does not mean that it must do so. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.

> In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the [§] 1983 risk, even if the harm ultimately was not averted. A prison official's duty under the Eighth Amendment is to ensure "'reasonable safety,'" *Helling*, [509 U.S. 25] at 33, 113 S.Ct. [2475] at 2481 [(1993)]; *see also Washington v. Harper*, 494 U.S., at 225, 110 S.Ct., at 1038-1039; *Hudson v. Palmer*, 468 U.S. [517] at 526-527, 104 S.Ct. [3194] at 3200-3201 [(1984)], a standard that incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions," *Spain v. Procunier*, 600 F.2d 189, 193 ([9th Cir.] 1979) (Kennedy, J.); *see also Bell v. Wolfish*, 441 U.S. 520, 547-548, 562, 99 S.Ct. 1861, 1878-1879, 1886, 60 L.Ed.2d 447 (1979). Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Farmer v. Brennan*, 511 U.S. at 844-45, 114 S. Ct. at 1982-83. Preceding the reasoning set forth above, the Supreme Court explained that the establishment of the constitutional violation requires, first, that the alleged deprivation be "sufficiently serious[,]" demonstrating a "substantial risk of serious harm[,]" and, second, that the prison official's state of mind was of "deliberate indifference" to the prisoner's health or safety. *Id.* at 833-35, 114 S.Ct. at 1977. In short, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, 114 S. Ct. at 1979.

As the circuit court aptly explained, petitioner "offered no evidence or testimony in support of her argument that failure to change [or expand] the existing policy caused a violation

of her constitutional rights." In support of her argument, petitioner heavily relies on the testimony of WVRJCFA employee Cpl. Jeff Brewer. Petitioner vaguely asserts that Cpl. Brewer's testimony demonstrates that WVRJCFA employees "were fully aware of the danger and risk from allowing a male officer to be with a female in a jail cell." However, the cited transcript passages do not demonstrate a nexus between respondent's policies and any assault. Rather, Cpl. Brewer testified that, when entering the cell of a female inmate at the facility, he does so only with another guard "[b]ecause that's what I do. . . . That's what we was trained." He was unable to identify a reason for this practice, though, instead refusing to speculate and maintaining, "I'm just going to say that's how I was trained." We find no evidence in Cpl. Brewer's testimony suggesting that Respondent Delong or WVRJCFA officials deliberately placed her or other inmates in harm's way.[12] Petitioner relates no other testimony to suggest that respondent's policy formulation harmed her. Moreover, Respondent Delong testified that he had never been notified of sexual misconduct by a correctional officer in a hospital setting, nor had he been made aware of any allegation against the correctional officer that was assigned to guard petitioner during her hospitalization.

Though the circuit court rested its grant of summary judgment on its finding of qualified immunity, we find that petitioner has failed to present evidence from which a reasonable jury could find that respondents violated petitioner's constitutional protections.[13] Respondents were properly awarded summary judgment.

E.

Our conclusion that petitioner failed to present evidence supporting her ultimate claims should not be construed as a criticism or rejection of the circuit court's application of qualified immunity to the constitutional claims. Indeed, we acknowledge that the question of qualified immunity is the threshold inquiry in a case such as the one before us, in order "to ensure that immune defendants' right '"not to be subject to the burden of trial"' remains inviolate." *W.Va. Dept. of Health and Human Resources v. Payne*, 231 W.Va. 563, 570, 746 S.E.2d 554, 562 (2013) (*quoting Robinson v. Pack*, 223 W.Va. 828, 833, 679 S.E.2d 660, 665 (2009)). However, inasmuch as petitioner's failure to present "underlying facts indicating a sufficiently substantial danger" or deliberate indifference to such danger (*see Farmer*, 511 U.S. at 844-45, 114 S. Ct. at 1982-83) is evident, we find it unnecessary to assume the more arduous qualified immunity

---

[12] Moreover, though she references it, petitioner fails to identify how Cpl. Brewer's testimony regarding training on the use of restraints is relevant to the policy question before us.

[13] Our discussion of the Eighth and Fourteenth Amendments does not imply that we have ignored petitioner's broad assertion that she may have suffered other constitutional violations. However, petitioner has limited her discussion to the Eighth and Fourteenth Amendments, and we decline to address what petitioner did not.

14

inquiry.[14] Under the unique circumstances of the case before us, and based on the evidence presented, we find no error.

---

[14] By this, we mean that the qualified immunity analysis requires consideration of the requirement that the asserted violated right is "clearly established." Here, petitioner has broadly asserted certain constitutional violations. This does not mean, however, that she has sufficiently identified violation of a right to withstand qualified immunity scrutiny. The United States Supreme Court instructs:

> The operation of [the standard of objective legal reasonableness], however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow* [*v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982)]. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. Harlow would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis* [*v. Scherer*], 468 U.S. [183] at 195, 104 S.Ct. [3012] at 3019 [1984]. It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, *see Mitchell* [*v. Forsyth*], supra, 472 U.S. [511] at 535, n. 12, 105 S.Ct. [2806] at 2820, n. 12 [(1985)]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. *See, e.g.*, *Malley* [*v. Briggs*], supra, 475 U.S. [335] at 344-345, 106 S.Ct. [1092] at 1097-1098 [(1986)]; *Mitchell, supra*, 472 U.S., at 528, 105 S.Ct., at 2816; *Davis, supra*, 468 U.S., at 191, 195, 104 S.Ct., at 3017, 3019.

*Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S. Ct. 3034, 3038-39, 97 L. Ed. 2d 523 (1987). On the face of the pleadings, and based on the noticeable absence of evidence or authority describing a "more particularized" violation, it appears that petitioner has fallen short of meeting this standard.

V.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 27, 2017

**CONCURRED IN BY:**

Chief Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth A. Walker