# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 18-0522 and No. 18-0937** (Berkeley County 17-F-228)

**Patrick S.,**
**Defendant Below, Petitioner**

**FILED**

**November 4, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In these consolidated appeals, Petitioner Patrick S.,[1] by counsel Kevin D. Mills and Shawn R. McDermott, appeals his February 16, 2018, conviction of one count of sexual abuse by a parent, guardian, or custodian (No. 18-0522), and the October 19, 2018, order that sentenced him to ten to twenty years in prison, plus forty years of extended supervision and placement on the sex offender registry for his crime (No. 18-0937). The State of West Virginia, by counsel Shannon F. Kiser, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2015, petitioner, petitioner's wife S.L., and S.L.'s two daughters from another marriage were living with petitioner in his mother and father's basement.

On February 28, 2015, S.L. called the sheriff's department to report a sexual assault against her then-eight-year-old daughter, Z.V., which allegedly occurred on the evening of February 27, 2015. In a statement to Dep. J.M. Whitehead of the Berkeley County Sheriff's Office, S.L. reported that she saw petitioner and Z.V. kissing "while using their tongues" as Z.V. lay on her bed. S.L. also reported that Z.V. used a stuffed animal to show where petitioner had touched her in the past. That same day, Dep. Whitehead interviewed petitioner, who denied S.L.'s allegations and claimed

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon* B., 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

he was just kissing Z.V. goodnight. Following the interview, Dep. Whitehead scheduled a Child Advocacy Center ("CAC") interview for Z.V. and executed a search warrant at petitioner's residence. There, Dep. Whitehead seized electronic devices including a Trak phone, sex toys, some items of clothing, and bed sheets. Finally, Dep. Whitehead obtained DNA samples from petitioner, S.L., and Z.V. that he sent to the State Police Laboratory for forensic testing. Also that day, Z.V. was interviewed at the CAC. During the interview, Z.V. claimed (1) petitioner intruded on her vagina and anus with his penis and sex toys on multiple occasions; (2) the assaults occurred as recently as the previous week and while her mother was in the shower or at a doctor's appointment; and (3) petitioner had taken pictures and videos of these acts with his cell phone.

On March 2, 2015, the police arrested petitioner and charged him with one count of first-degree sexual assault. Thereafter, Cynthia Leahy, a sexual assault nurse evaluator, examined Z.V.

At an April 27, 2015, preliminary hearing, the State called Dep. Whitehead who testified that, on February 28, 2015, S.L. told him she saw petitioner kissing Z.V. with his tongue, and Z.V. told him that petitioner took pictures of her while he abused her. Following Dep. Whitehead's testimony, the magistrate court continued the hearing and ordered the State to produce the video recording of the CAC interview. Petitioner claims the State refused to comply with the order and, instead, presented petitioner's case to a grand jury on October 29, 2015. The resulting indictment charged petitioner with eighteen counts: six counts of sexual assault in the first degree, six counts of incest, and six counts of sexual abuse by a parent or guardian. The indictment alleged petitioner (1) touched Z.V.'s vagina with his tongue, (2) touched Z.V.'s anus with his tongue, (3) touched Z.V.'s anus with a sex toy; (4) touched Z.V.'s vagina with a sex toy; and (5) had Z.V. touch his anus with a sex toy.

The State disclosed to petitioner that the West Virginia State Police Forensic Laboratory found no seminal fluid or DNA on any of Z.V.'s clothing or sheets, and that Z.V.'s DNA was absent from the sex toys, although the sex toys did contain DNA from both petitioner and S.L. The State also disclosed the following text messages sent between petitioner and S.L. during the early morning hours of February 28, 2015:

*S.L.*: Yeah. I'm just sitting here wondering what the F[--]K I'm going to do.

*Petitioner*: I think my next step is work, then laundry, then call Brooklane or somewhere to see if I can get an appointment to talk to someone.

*Petitioner*: Still there?

*S.L.*: Yeah. Sorry. Putting kids to bed.

*S.L.*: Talk to someone and say what?

*Petitioner*: No problem.

*Petitioner*: Say I don't know.

*S.L.*: What kind of help is this. The family's going through this.

*Petitioner*: I don't know. I thought they might be a place to ask.

*Petitioner*: I thought maybe I could get help for me to be a better person.

*S.L.*: I have no money, no assets, no car. I'm terrified to stay and I'm terrified to go. [Z.V.] needs therapy, though a therapist is going to report you. I still haven't decided if I'm going to report you.

*Petitioner*: k

*S.L.*: I can't trust you.

*Petitioner*: k

*S.L.*: You lied to me repeatedly.

*Petitioner*: Yes, I did.

*S.L.*: We made the home. You [made] the home I've dreamed of crumble to bits.

*S.L.*: Because why? I really have no idea.

*S.L.*: All I wanted was a life with you. But that wasn't enough.

*Petitioner*: I'm sorry.

*Petitioner*: Not that I think that's enough.

*S.L.*: This isn't just reckless. It's illegal. Immoral. She trusted you. I trusted you.

*Petitioner*: I don't know what to do. If you want a divorce, I won't fight you.

*S.L.*: I just know I can't feel safe with you around her. That's as far as I've gotten and you don't seem to understand why.

*Petitioner*: I think I understand why.

. . . .

*S.L.*: I'm not coming home. I spoke to the police this morning.

*S.L.*: I'll arrange to get my things too at some point.

*Petitioner*: Ok.

3

*S.L.*: I can't safely do anything else.

*Petitioner*: Ok.

. . . .

*Petitioner*: I expect that the police will be here today.

*S.L.*: Ok

*S.L.*: I know they are interested in interviewing you.

Petitioner and S.L. divorced prior to petitioner's trial. Also prior to the trial, petitioner disclosed evidence of a GoFundMe.com fundraising campaign created by or for S.L. a day or two after she reported petitioner to the police. S.L. later testified that a friend set up the GoFundMe.com campaign for her, that she received about $5,000 in donations, and that she used the money to obtain housing, household goods, and a used car.

At an August 15, 2017, pre-trial hearing, petitioner asked the circuit court to preclude the introduction of any statements between himself and S.L., including the February 28, 2015, text messages cited above, based on the marital testimonial privilege. The State countered that the text messages did not fall within the blanket testimonial privilege because petitioner and S.L. were no longer married. The State also claimed that, by statute, it could introduce the messages in a criminal prosecution for the sexual abuse of a child. Petitioner also moved the court (1) to remand the case for a preliminary hearing; (2) to disclose the grand jury proceedings so he could investigate whether the grand jury was misled regarding spousal communications or had relied upon evidence from DNA testing that had not been resolved when the grand jury met; (3) to require the State to disclose all forensic reports and all evidence subject to *Brady v. Maryland*, 373 U.S. 83 (1963), including any contradictory statements made by Z.V.; (4) to suppress evidence seized from his residence; and (5) for the particularization of his indictment.

The State sought a ruling on the admissibility of statements made by Z.V. to S.L. and Z.V.'s statement during the CAC interview. The State noted that it planned to seek a superseding indictment against petitioner to clarify the charges returned in the first indictment. The State said it intended to use the same evidence it used before, "but essentially elect[ed] through prosecutorial discretion to proceed differently." The State also produced five reports drafted by State Police Sgt. David Boober that contained the results from the forensic testing of the electronic devices seized from petitioner's residence. Regarding petitioner's request that the State disclose any *Brady* evidence concerning contradictory statements made by Z.V., the State affirmed that it did not have any such evidence; however, it said that if it learned of any such evidence, it would disclose it. The State objected to petitioner's request for the grand jury's transcripts, based on his inability to show that the grand jury was misled.

By order entered on August 30, 2017, the circuit court granted petitioner's motion for particularization of the indictment, but denied petitioner's motion for remand for a preliminary hearing. Subsequently, the circuit court (1) denied petitioner's motion in limine to preclude the

4

introduction of marital communications; (2) found Z.V.'s statement to her mother and to the CAC interviewer to be admissible; and (3) denied petitioner's motion to disclose the transcripts of the grand jury proceedings. Finally, the circuit court declined to rule on petitioner's motion for disclosure of any *Brady* evidence based on the State's claim that it did not have any such impeachment evidence.

On August 31, 2017, a grand jury returned a superseding indictment against petitioner alleging thirty-one counts including seven counts of sexual assault in the first degree; seventeen counts of sexual abuse by a parent, guardian, custodian or person in a position of trust; and seven counts of incest. Specifically, the indictment alleged that petitioner

> "inserted his penis into [Z.V.'s] anus on three separate occasions," "inserted his penis into [Z.V.'s] mouth" on three separate occasions, "inserted a sex toy into [Z.V.'s] anus," "had [Z.V.] touch his anus with her tongue," "touched her vagina with his mouth" on five separate occasions, "touched her vagina with his hand/fingers," "touched her vagina over clothes," "touched/rubbed her vagina with his penis," and [Count 30] "*rubbed her chest, over her shirt, while kissing her*."

(Emphasis added.) Thereafter, the State disclosed medical records showing that sexual assault nurse evaluator Cynthia Leahy examined Z.V. two weeks after S.L. reported petitioner's alleged abuse, and found no acute or healing injuries on Z.V.'s vaginal or anal areas.

At a second pre-trial hearing on January 29, 2018, the circuit court adopted its previous rulings and noted that the new allegations in the superseding indictment were based upon a review of Z.V.'s CAC interview.

The day before trial, the State filed a motion to dismiss Count 22 (that alleged Z.V. touched petitioner's anus with her tongue) because Z.V. now said that event did not occur. In response, petitioner again asked the circuit court to disclose the grand jury proceedings so he could determine why the State alleged Count 22. Petitioner argued that Z.V.'s repudiation of Count 22 was sufficient evidence that the State misled the grand jury.

Petitioner's trial commenced on February 13, 2018. Following voir dire, the circuit court dismissed Count 22 with prejudice, ruled that petitioner could cross-examine Z.V. about the dismissal of Count 22, and denied petitioner's motion for disclosure of the grand jury transcript.

During its opening statement, the State told the jury "You're going to hear that [S.L.] could see [petitioner's and Z.V.'s] tongues touching one another's." "You're going to hear that [S.L.] could see [petitioner] caressing the early prepubescent child's chest."

During its case-in-chief, the State called Dep. Whitehead, Sgt. Boober, S.L., Z.V., and Cynthia Leahy.

On direct examination, Dep. Whitehead testified that when he interviewed petitioner on February 28, 2015, petitioner began emptying his pockets and repeatedly said he was going to jail. Dep. Whitehead also testified on direct as follows:

*The State*: So what happened when you met with [S.L.]?

*Dep. Whitehead*: She explained to me that the previous night she had walked into [Z.V.'s] bedroom and saw [petitioner] kissing [Z.V.] with his tongue.

On cross-examination, Dep. Whitehead confirmed that "[t]he only thing . . . [S.L.] told me was that previous night she had walked in on [petitioner] and [Z.V.] kissing with their tongues. That's the only thing she alleged and told me."

Sgt. Boober testified regarding his forensic examination of the electronic devices he seized from petitioner's residence, including petitioner's cell phone, SD cards, hard drives, and a video camera. With regard to petitioner's cell phone, Sgt. Boober identified "approximately [fifty] some deleted files [with] dates between February 27, 2015, and February 28th, 2015[,]" and stated that the phone's metadata suggested petitioner had recently "cleaned up" the phone. Sgt. Boober also testified that he was able to recover the text messages between petitioner and S.L. on February 28, 2015 (set forth above). Sgt. Boober thereafter refreshed his recollection using a property receipt that petitioner claims the State did not turn over to him prior to trial. Sgt. Boober then testified that he examined other electronic devices seized from petitioner's residence and completed a report on that analysis. Among those devices was a Trak phone (apparently used by Z.V.). Sgt. Boober testified that he could not retrieve anything from the Trak phone due to its age. Petitioner moved for a mistrial based on the State's failure to disclose the report and the Trak phone. Petitioner claims he repeatedly asked the State about any such evidence. The State argued that petitioner and his forensic expert had a list of all items seized from petitioner's home, yet they never asked to examine any of the seized devices. The court ultimately denied petitioner's motion, but ordered the State to provide the report and the Trak phone to petitioner.

On cross-examination, Sgt. Boober acknowledged that he was able to recover hundreds of deleted files from petitioner's cell phone and that none of those files contained incriminating evidence. He further testified that the unrecoverable files were in a video game file installed on petitioner's phone.

S.L. testified on direct that when she checked on Z.V. on the evening of February 27, 2015, she saw petitioner on top of Z.V. with "his tongue like down her throat . . . and he had his hands all over her chest and . . . he was in her bed on top of her." She also testified that when she left petitioner on February 27, 2015, she owned nothing beyond a pre-paid smart phone, a food stamp card, a few clothes, a few days' worth of medication, and whatever her two daughters packed in their backpacks.

On direct examination, Z.V. testified that petitioner was bending over her when her mother discovered petitioner kissing her with his tongue in her mouth. The State then asked Z.V., "Would [petitioner] ever touch you on your chest when he was kissing you?" Z.V. replied, I don't think so." However, she later testified that petitioner had, in fact, touched her chest over her clothes. Z.V. also testified that petitioner used his mouth on her chest and vagina; put his penis in her mouth on several occasions; touched the outside of her vagina with his penis; and inserted his penis in her buttocks on several occasions. Z.V. further testified that petitioner inserted sex toys into her anus. The State then asked Z.V., "[H]as everything you've said this morning thus far, has it been

the truth?" Z.V. replied, "Yes." Finally, Z.V. testified that petitioner's crimes took place primarily in petitioner and her mother's bed.

Sexual assault nurse evaluator Cynthia Leahy testified regarding her report in which she made "nonspecific findings" and "no findings concerning acute or healing injuries." The State asked, "Does it surprise you that there was nonspecific findings?" Ms. Leahy responded: "No, it's not surprising. There's been over two decades of research in this area and that – those results have shown between [eighty] and [ninety seven] percent of all legally confirmed sexual abuse related to the vulva and anus of a child will be normal on examination."

Following the close of the State's case-in-chief, petitioner moved for a verdict of acquittal outside the presence of the jury. With regard to Count 30 of the superseding indictment (that alleged petitioner rubbed Z.V.'s chest over her shirt while kissing her), petitioner said,

> But specifically, Your Honor, [C]ount . . . . 30 of the indictment -- I heard [the prosecutor] questioning [Z.V.] today and one of the questions was "did he ever rub your chest." I think it was directly as [to] this count "rub your chest over your shirt while kissing you?" And she said no. Her answer was no, so on that count there is no evidence of anything that can go to the jury. The witness said no to that.

The State responded that "the variance between the language in the indictment and the testimony from the child doesn't negate the fact that she described under oath sexual abuse by a parent, guardian, or custodian involving him touching her breasts, and I think that variance should not be enough for a dismissal." The circuit court asked whether the "while kissing her" language was superfluous and then said:

> I think this is a jury question . . . . I think the specificity of rubbing her chest over her shirt is in fact enough and that the language "while kissing her" this jury could find that either the event described by Z.V. herself constitutes that offense or that the mother's account as she described it could constitute that offense.

During petitioner's case-in-chief, he called DNA expert Larry Debus, who concluded that Z.V.'s DNA was not present on any item that contained petitioner's DNA. Petitioner also called his mother, Penny S., who questioned Z.V.'s character for truthfulness.

Following the close of all the evidence, the circuit court instructed the jury that it had to find that the State proved petitioner "rubbed [Z.V.'s] chest, over her shirt, while kissing her" to convict him of Count 30.

On February 16, 2018, the jury acquitted petitioner on twenty-nine of the remaining thirty counts; however, the jury found petitioner guilty of Count 30. The circuit court offered to remand petitioner to the regional jail so he could undergo a post-conviction sexual offender evaluation. Petitioner declined that offer in favor of hiring his own psychological expert. The circuit court cautioned petitioner not to delay sentencing by hiring his own expert. Petitioner averred that he had already selected an expert and that the evaluation would cause no delay in sentencing. The circuit court set petitioner's sentencing hearing for April 20, 2018.

On March 5, 2018, petitioner moved the court for a post-judgment verdict of acquittal.

A probation officer completed petitioner's presentence investigation report on April 10, 2018. On April 12, 2018, petitioner moved to continue his April 20, 2018, sentencing hearing because his independent post-conviction sexual offender evaluation was only "halfway done." On April 16, 2018, the State objected to petitioner's request for a continuance. The State noted that (1) petitioner agreed to have his evaluation completed by April 20, 2018; (2) petitioner failed to explain why the evaluation was only "halfway done"; (3) Z.V. and her family, who now lived outside West Virginia, made travel arrangements to be present at the sentencing hearing; and (4) the case had been ongoing since February of 2015 and the victim was entitled to justice. The circuit court denied petitioner's motion for a continuance.

On April 20, 2018, the circuit court held a hearing on petitioner's post-trial motions, including a motion to continue the sentencing portion of the hearing or to bifurcate the sentencing portion pending the completion of his independent evaluation. With regard to his post-trial motions, petitioner alleged (1) insufficient evidence, based upon the differing testimonies of Z.V. and S.L.; (2) that the language of Count 30 nullified his prosecution on that charge; (3) various *Brady* violations; (4) that he was prejudiced by the State's failure to turn over the electronic media report and the Trak phone; and (5) prosecutorial misconduct based on the State's comments regarding petitioner's right to remain silent during its closing argument. Petitioner also claimed that S.L. benefitted from two additional GoFundMe.com campaigns, which directly contradicted the State's argument on closing that S.L. participated in only one GoFundMe.com campaign. The circuit court denied petitioner's post-judgment motion for a verdict of acquittal and his supplemental post-trial motions.

Also at the April 20, 2018, hearing, and with regard to petitioner's failure to have his independent evaluation timely completed, the circuit court asked petitioner's counsel, "what harm is there in proceeding with sentencing today and then allowing you to raise [the sentence] as a motion for reconsideration?" Petitioner's counsel responded that, "[t]he harm is that it's a different standard on a motion for reconsideration." The circuit court responded, "If I agree to allow the same standard as what exists now in your motion for reconsideration, is there any other legal prejudice . . .?" Petitioner's counsel responded, "If it's the same standard . . . it's almost a similar thing as doing a bifurcated sentencing hearing . . . ." The court determined it would "move forward" for the sake of "judicial economy." Petitioner's counsel responded, "Certainly." The court then asked if petitioner's counsel had any objection, and petitioner's counsel replied, "[n]o objection." The circuit court sentenced petitioner under West Virginia Code § 61-8D-5(a) to ten to twenty years in prison, plus an additional forty years of extended supervision. The court also ordered petitioner to comply with the requirements of the sex offender registry.

Following the sentencing hearing, the case was assigned to a newly elected circuit court judge. Petitioner thereafter filed a motion to reopen sentencing under Rule 35(b) of the West Virginia Rules of Criminal Procedure. The circuit court granted the motion over the State's objection. At a September 14, 2018, hearing, petitioner's expert testified that petitioner had a low probability of recidivism and recommended outpatient treatment. Petitioner's mother testified that petitioner did not violate the terms of his pretrial bond release while he lived at her house, and that

he could continue to live at her house if the court imposed home confinement. Petitioner spoke on his own behalf and denied committing the crime alleged in Count 30. Petitioner's counsel then argued for an alternative sentence.

The circuit court found it was not convinced petitioner's mother would provide a suitable support system for home incarceration, or that petitioner had a low risk of reoffending because that conclusion was based on the evaluator's presumption that petitioner had been truthful during his evaluation. The circuit court also found that it "was limited to what has happened before under the [initial] judge that heard the case and according to what the jury found . . . ." Therefore, the circuit court "confined its ruling to sentencing and to the second part of what [it] understands was intended to be a bifurcated sentencing hearing" and imposed the same sentence imposed by the initial judge: ten to twenty years in the prison, plus an additional forty years of extended supervision, and compliance with the requirements of the sex offender registry.

Petitioner now appeals and raises ten assignments of error.

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner first argues that there was insufficient evidence for the jury to convict him on Count 30, which alleged petitioner "rubbed [Z.V.'s] chest, over her shirt, while kissing her." Petitioner highlights that, with regard to Count 30, the State asked Z.V., "Would [petitioner] ever touch you on your chest when he was kissing you?" Z.V. replied, "I don't think so." Petitioner also points to the fact that the State, on direct and again on redirect, asked Z.V. if everything she testified to was true and that she answered "Yes." Petitioner notes that the only other evidence that petitioner rubbed Z.V.'s chest came from S.L. who testified that on the night of February 27, 2015, she saw petitioner kissing Z.V. while groping Z.V.'s chest. With regard to this testimony, petitioner points to the fact that Dep. Whitehead testified that when he interviewed S.L. on February 28, 2015, S.L. did not mention that she saw petitioner groping Z.V.'s chest.

> "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." Syl. pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 1, *State v. McFarland*, 228 W. Va. 492, 721 S.E.2d 62 (2011).

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the State established the elements of Count 30 beyond a reasonable doubt. S.L. testified that she saw petitioner on top of Z.V. with "his tongue like down her throat . . . and he had his hands all over her chest . . . ." This testimony, if believed by the jury, was sufficient to warrant petitioner's conviction on Count 30. Moreover, Z.V. testified that petitioner's tongue was in her mouth and that petitioner had touched her chest with his hands at various times when she was living with him. Although petitioner attempts to discredit Z.V. and S.L. by contrasting their trial testimonies, the jury weighed the evidence and concluded that the criminal conduct alleged in Count 30 occurred. "Credibility determinations are for a jury and not an appellate court." *Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, syl. pt. 3, in part. Accordingly, we find no error.

In petitioner's second assignment of error, he argues that the State substantially and prejudicially amended Count 30 of the superseding indictment by removing the phrase "while kissing her," which allowed the jury to convict petitioner for conduct not specified by Count 30. In support of this claim, petitioner notes that, at a bench conference, the State argued that the evidence at trial was sufficient to support a conviction on Count 30 if it found petitioner touched Z.V.'s chest over her shirt whether or not he was kissing her. Petitioner countered that the State did not charge petitioner with "touching Z.V.'s breasts over her shirt," and that removing the grand jury charge that petitioner touched Z.V.'s chest "while kissing her" would be a substantial and prejudicial amendment. On appeal, petitioner argues that "[w]hen a defendant is convicted of charges not included in the indictment an amendment has occurred which is per se reversible error." *State v. Cora*, 223 W. Va. 573, 582-83, 678 S.E.2d 306, 315-16 (2009). Petitioner also argues that allowing the State to claim the alleged event happened in some way other than that charged made it impossible for him to defend against the allegation. Thus, he claims the variance in proof is fatal to his conviction.

Petitioner's claim that Count 30 was amended is wholly unsupported by the record. First, the jury did not hear the discussion at the bench conference regarding the "while kissing her" language. Second, at the close of all evidence, the circuit court instructed the jury that it had to find that the State proved petitioner "rubbed [Z.V.'s] chest, over her shirt, while kissing her" to convict him of Count 30. That is the same language contained in petitioner's superseding indictment; thus, there was no amendment to the charge contained in the superseding indictment. Third, S.L. testified that when she checked on her daughter on the evening of February 27, 2015, she saw petitioner on top of Z.V. with "his tongue like down her throat . . . and he had his hands all over her chest and . . . he was in her bed on top of her." Conversely, Z.V. testified that petitioner was bent over her and kissing her with his tongue in her mouth. We have oft said, "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and to resolve questions of fact when the testimony is conflicting." *Smith v. Cross*, 223 W. Va. 422, 430, 675 S.E.2d 898, 906 (2009) (citations omitted). Here, the jury weighed the evidence and found petitioner guilty of an unmodified Count 30. Accordingly, we find no error.

In petitioner's third assignment of error, he contends that the circuit court erred in failing to order the State to disclose transcripts of the original and superseding grand jury proceedings, allegedly because the State presented false evidence and/or impeachment evidence to the grand jury that it did not disclose to petitioner. Petitioner alleges that the superseding indictment and the

evidence at trial proves that, pretrial, the State had inconsistent statements from Z.V. and/or S.L. With regard to Count 30, petitioner highlights that Z.V. did not mention at the CAC interview that petitioner was touching her chest when her mother walked in and saw petitioner kissing her. Petitioner also states that, *to his knowledge*, S.L. did not claim, prior to trial, that petitioner was rubbing Z.V.'s chest while he was kissing Z.V. Petitioner also questions Count 22, that alleged Z.V.'s mouth was on petitioner's anus, given that the State dismissed Count 22 prior to trial. Petitioner therefore claims the grand jury could have only charged him with Count 30 and Count 22 if Z.V. and/or S.L. made prior inconsistent statements.

With regard to the reporting and disclosure of grand jury proceedings, Rule 6(e)(2) of the West Virginia Rules of Criminal Procedure provides a general rule of secrecy for grand jury proceedings. The exceptions to Rule 6(e)(2) are found in Rule 6(e)(3)(A), and do not apply in this case.[2] "The decision to disclose grand jury minutes prior to trial is committed to the discretion of the trial judge. *Bast v. United States*, 542 F.2d 893, 895 (4th Cir. 1976); *United States v. McGowan*, 423 F.2d 413, 418 (4th Cir. 1970)." *United States v. Walton*, 602 F.2d 1176, 1180 (4th Cir. 1979). "'Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.' Syl. Pt., *Barker v. Fox,* 160 W.Va. 749, 238 S.E.2d 235, 235 (1977)." Syl. Pt. 2, *State ex rel. Pinson v. Maynard*, 181 W. Va. 662, 383 S.E.2d 844 (1989).

Petitioner fails to show that the circuit court erred in denying his request for transcripts of the grand jury proceedings because he failed to show any willful, intentional fraud by the State. Instead, petitioner merely speculates that there were errors in the grand jury proceeding. For example, petitioner speculates that S.L. did not claim, prior to trial, that petitioner was rubbing Z.V.'s chest while he kissed her. Such speculation cannot support a finding that the State willfully and intentionally committed fraud. As for petitioner's superseding indictment, the charges contained therein were based on the content of Z.V.'s CAC interview. With regard to Count 22, the State properly dismissed it after Z.V. denied the crime alleged in Count 22 occurred. Based on these facts and in light of the relevant law, we reject petitioner's claim that the circuit court erred in failing to order the State to disclose transcripts of the grand jury proceedings.

In petitioner's fourth assignment of error, he claims the State violated his due process rights when it withheld exculpatory evidence and evidence material to his defense. As noted above, the State told petitioner prior to trial that it had disclosed all of Sgt. Boober's reports. However, at trial, petitioner learned he did not receive all of Sgt. Boober's reports and that Sgt. Boober had

---

[2] Rule 6(e)(3)(A) of the West Virginia Rules of Criminal Procedure provides,

> Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to: (i) An attorney for the state for use in the performance of such an attorney's duty; and (ii) Such official personnel as are deemed necessary by an attorney for the state to assist an attorney for the state in the performance of such attorney's duty[.]

Petitioner, as the defendant in this matter, satisfies neither Rule 6(e)(3)(A)(i) nor Rule 6(e)(3)(A)(ii).

examined the Trak phone used by Z.V. (although he was unable to glean anything from it due to its age). In response, the circuit court ordered the State to disclose any undisclosed reports and the Trak phone to petitioner. Petitioner argues that the State's failure to disclose all of Sgt. Boober's reports and the Trak phone was a *Brady/Hatfield* violation requiring the reversal of his conviction under Syllabus Point 2 of *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007), which provides:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Petitioner first argues that the undisclosed evidence was favorable as exculpatory or impeachment evidence because Z.V. said petitioner took pictures of his sexual abuse of Z.V., but Sgt. Boober reported that he found no such pictures in the undisclosed materials. Petitioner admits that the State disclosed the majority of Sgt. Boober's reports, and that in one such report, Sgt. Boober stated that he found no incriminating pictures on any of the devices he seized from petitioner's house. Petitioner argues that the absence of incriminating material on the untested material would have bolstered the information he had already received from Sgt. Boober. Petitioner also claims that Z.V.'s Trak phone had impeachment value because it showed Z.V. had the ability to call for assistance or to report any abuse.

The State did not suppress evidence in violation of *Brady* or *Hatfield* with regard to the Trak phone used by Z.V. Although petitioner claims he could have used the Trak phone to show that it did not contain child pornography or illicit pictures of Z.V., we note that Sgt. Boober testified at trial that he was unable to recover any data from the Trak phone and that he recovered no illegal pictures or recordings from petitioner's other electronic devices. Thus, the jury heard the testimony that petitioner now claims he would have presented if he had received the State's Trak phone report. Further, the fact that petitioner could not forensically examine the Trak phone had little bearing on his conviction on Count 30, given that neither Z.V. nor S.L. testified that petitioner took a picture of himself or otherwise used the Trak phone while he committed the crime charged in Count 30. Moreover, the State informed petitioner about the Trak phone because it was listed as a device seized by the police and was available for testing at petitioner's request, yet petitioner never sought forensic testing of it. Thus, the Trak phone falls outside of the scope of *Brady* evidence because (1) it was previously disclosed by the State and made available to petitioner; and (2) yielded no material information during petitioner's trial that would "undermine confidence in the verdict" with regard to Count 30, the only crime of which petitioner was found guilty.

Petitioner's second *Brady/Hatfield* argument regards S.L.'s alleged participation in a total of three GoFundMe.com campaigns to raise money, apparently for herself and her children. Petitioner notes that the State claimed on closing that S.L. stopped using GoFundMe.com to raise money after her first campaign. Petitioner claims that his theory at trial was that S.L. embellished the alleged abuse as a means of making money during her GoFundMe.com campaigns. Therefore,

12

he claims S.L. lied when she testified to participating in only one GoFundMe.com campaign.

In his brief on appeal, petitioner does not state when these two additional GoFundMe.com campaigns occurred -- that is, whether they occurred prior to the trial in this matter. Second, even if we assume that S.L. participated in two additional campaigns prior to petitioner's trial, petitioner presents no evidence that the State knew about these additional campaigns. Thus, there is no evidence that the State suppressed any evidence regarding them. Petitioner argues that the State should be imputed to have knowledge of S.L.'s additional GoFundMe.com campaigns because that information would have allegedly been included in S.L.'s statement(s) that the State failed to disclose. This claim is wholly speculative. Accordingly, petitioner can prove no *Brady/Hatfield* violation. Finally, petitioner's counsel cross-examined S.L. with regard to her initial GoFundMe.com campaign. Accordingly, the jury heard about that campaign and could draw whatever conclusions it chose to from that evidence. Accordingly, we find no error.

In petitioner's fifth assignment of error, he argues that the circuit court erred in allowing the admission of confidential marital communications between petitioner and S.L., i.e., the text messages between petitioner and S.L. on February 28, 2015. Petitioner claims that his communications with S.L., who was then his wife, were protected by the marital privilege found in West Virginia Code § 57-3-4. That section provides:

> Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

The circuit court correctly found that petitioner's communications with S.L. were not protected by the marital privilege found in West Virginia Code § 57-3-4. Count 30 of petitioner's indictment charged petitioner with violating West Virginia Code § 61-8D-5, sexual abuse by a custodian, guardian, or person in position of trust. West Virginia Code § 61-8D-8, in that same article, provides: "[h]usband and wife are competent witnesses in any proceeding under this article and cannot refuse to testify on the ground of their marital relationship or the privileged nature of their communications." Accordingly, S.L. was a competent witness as to petitioner. Thus, we find no error.

In his sixth assignment of error, petitioner maintains that the circuit court erred in failing to remand his case to the magistrate court for a full and complete preliminary hearing. As noted above, the magistrate court continued petitioner's preliminary hearing so it could review Z.V.'s CAC interview. However, before the preliminary hearing could reconvene, the State obtained the eighteen-count indictment against petitioner. Accordingly, the case was transferred to the circuit court, thereby eliminating petitioner's right to a preliminary hearing in magistrate court. Petitioner argues that, as a result, the State denied him the opportunity to rebut the State's evidence, which could have stopped the case from moving forward.

Petitioner was not entitled to a continuation of his earlier preliminary hearing once the State secured an indictment. "If . . . the State elects to indict [a criminal defendant] without a preliminary

13

hearing or before one can be held, the preliminary hearing is not required." Syl. Pt. 3, in part, *State ex rel. Rowe v. Ferguson*, 165 W. Va. 183, 268 S.E.2d 45 (1980). "The well-settled purpose of a preliminary hearing is to determine whether there is probable cause to hold a defendant to answer for the alleged offenses set forth in the criminal complaint." *State v. Davis*, 236 W. Va. 550, 555, 782 S.E.2d 423, 428 (2015). Similarly, the purpose of a grand jury proceeding is to determine whether there is probable cause to return an indictment against a defendant charging him with criminal conduct. *See generally Barker v. Fox*, 160 W. Va. 749, 751, 238 S.E.2d 235, 236 (1977). Under *Ferguson*, petitioner's motion was neither necessary nor a matter of right. As such, the circuit court did not abuse its discretion by refusing to remand petitioner's case to the magistrate court for an additional preliminary hearing following the State's entry of the superseding indictment.

In petitioner's seventh assignment of error, he argues that the circuit court erred in allowing the State to admit certain hearsay statements, made by Dep. Whitehead and S.L., into evidence at trial. In that regard, Dep. Whitehead testified to statements made by Z.V. to explain why he obtained a search warrant for various objects, including sex toys and petitioner's cell phone:

> *The State*: Let me ask you about the phone. Why after observing the interview of [Z.V.] did you want to get your hands on [petitioner's] Samsung cellphone?
>
> *Dep. Whitehead*: [Z.V.] specifically stated that there were pictures taken of her with the Samsung cellphone and as well as she took pictures of [petitioner] with that phone I believe.
>
> *The State*: Now, you said you were also looking for what else other than the phone?
>
> *Dep. Whitehead*: Sex toys.
>
> *The State*: Why were you looking for sex toys?
>
> *Dep. Whitehead*: [Z.V.] had drawn pictures of sex toys in the interview and described where they would be located in the house.
>
> *The State*: Did she describe any actions with these sex toys?
>
> *Dep. Whitehead*: Yes, she stated that [petitioner] had used the sex toys on her as well as [petitioner] had told her to use them on him.

Immediately thereafter, petitioner's counsel interjected as follows:

> *Petitioner's counsel*: "[A]s it relates to the last question, I'd just like to ask the [c]ourt to instruct the jury that the answer called for a hearsay response, but I understand it's part of the investigation and the prosecutor's trying to lay a foundation, but if you would instruct them that's not substantive evidence. It's just hearsay evidence that's not --

14

*The Circuit Court*: Sure. Sometimes, folks, what somebody else has said, while we lawyers like to call it hearsay, if it's not offered to prove the truth of the matter asserted, then it's technically not considered hearsay, so for this purpose, [the State] had simply asked this officer to repeat some of the things [Z.V.] said not necessarily to prove to you that those facts are accurate or truthful, but merely to explain to you why [Dep. Whitehead] took the next steps he took in the form of writing the search warrant and looking for a search warrant. Does that satisfy you, [petitioner's counsel]?

*Petitioner's counsel*: And it's not substantive evidence.

*The Circuit Court*: Right, so at this point in time that's not substantive evidence.

Following the court's statement, petitioner's counsel resumed questioning Dep. Whitehead without further comment or objection.

In a pretrial order, the circuit court found that Dep. Whitehead's then-proposed testimony was admissible as non-hearsay because it was not being admitted to prove the truth of the matter asserted. At trial, petitioner's counsel did not object to Dep. Whitehead's testimony, but did twice ask the circuit court to instruct the jury regarding hearsay. The circuit court complied both times and petitioner's counsel lodged no objections to those instructions. Accordingly, we find that petitioner failed to preserve any error with regard to Dep. Whitehead's testimony.

Petitioner also argues that the circuit court erred in allowing the State to admit hearsay statements through the testimony of S.L. at trial. That testimony regarded petitioner's alleged statement to S.L. that "whatever [Z.V. told S.L.] is probably true." Prior to trial, the circuit court ruled that any testimony regarding petitioner's statement would be admissible as non-hearsay because it would not be admitted to prove the truth of petitioner's statement, but instead to put petitioner's statement into context. In that regard, S.L. testified at trial as follows:

*The State*: So, what -- to put in context what [petitioner] said, what had [Z.V.] told you at this time?

*Petitioner's Counsel*: Objection, your Honor. Hearsay. There's no foundation laid that [petitioner] knew what [Z.V.] said.

*The State*: Your Honor, my response would be it puts [petitioner's] statement of, "Whatever [Z.V.] told you is probably true," into context. Additionally, it explains further why [S.L.] had gone to confront [petitioner] to ask him that question in the first place, so. I would ask that it be used not for its truth, but to explain those two things.

*Petitioner's Counsel*: But again, your Honor, there's no evidence that the testimony – testimony that the defendant heard what [Z.V.] said. I don't see what the relevance is to what [Z.V.] said.

*The Circuit Court*: For the limited purposes of putting it into context, I think that it has to be allowed. It isn't offered for the truth of the matter, but I think it is to the extent that [S.L.] is testifying that [petitioner] said, "Whatever [Z.V.] said is probably true," that I will allow her to explain what it is that Z.V. said to her at that point in time. And [Z.V] will be testifying here.

And again, it's for the limited purposes of putting it into context so it's not offered to prove that is in fact what happened, but just to put it into context.

The State then continued to question S.L.:

*The State*: So based upon that, [S.L.], before you went in at that time to confront [petitioner], what had [Z.V.] told you?

 . . . .

*S.L.*: A little bit.  Just really -- a really little bit. But she has this stuffed monkey that she calls Elizabeth and she took it and she told me that he had touched her and she showed me Elizabeth and she pointed on the monkey to where he had touched her.

*The State*: Where on the monkey did she point?

*S.L.*: Well, if monkeys were humans, she pointed to like its chest area, which I mean, I had seen that. Then she also pointed to like its genital area and she also pointed to its tail, anal area.

 We have held that,

[g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) *the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action*; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard*, 183 W. Va. 1, 393 S.E.2d 221 (1990) (emphasis added). Here, the State used Z.V.'s statements to her mother to put into context petitioner's statement that "whatever [Z.V.] told you is probably true," i.e., to show why S.L. acted the way she did. The circuit court allowed the testimony solely for that purpose and instructed the jury accordingly. Therefore, because the testimony was not entered for the truth of the matter asserted, it did not violate Rule 802 of the West Virginia Rules of Evidence. Accordingly, we find no error.

In petitioner's eighth assignment of error, he argues that the State's comments in closing focused on the fact that petitioner did not testify on his own behalf and, therefore, infringed upon his right to remain silent. Specifically, during the State's rebuttal closing, the prosecutor said:

16

So those are the three main things about this defense theory that I really have or I think that you should have issue with. It never addressed this kissing incident, right? Because they can't. Because he was willing to kiss a child when mom's in the same basement, well, then he's certainly capable of these other acts, and that's why he didn't want to talk about it.

Petitioner did not lodge an objection to the State's comments, but raised them post-trial and claimed plain error. "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

We disagree with petitioner's claim that the State's comments on rebuttal closing were intended to highlight that petitioner did not testify at trial. Instead, the State, as it rebutted petitioner's counsel's closing, noted petitioner's counsel did not address S.L.'s testimony that she saw petitioner kissing Z.V. with his tongue. The State then explained why it believed petitioner's counsel avoided addressing that issue as noted above. When taken in context, it is clear that the State was responding to petitioner's counsel's closing argument and was not commenting on petitioner's right to remain silent. Thus, we reject petitioner's plain error argument.

In petitioner's ninth assignment of error, he argues that the circuit court judge who initially sentenced him erred in denying his motion to continue his sentencing hearing because, absent an evaluation, he could not seek an alternative sentence. *See* W. Va. Code § 62-12-2(e). Petitioner claims there was no reason for the circuit court to deny a continuance and no prejudice would have resulted from ordering one.

The United States and West Virginia Constitutions require due process in sentencing. *See* U.S. Const. amend. XIV, § 1; W. Va. Const. art. III, § 10. Procedural due process requires a hearing to "be appropriate to the nature of the case . . . the State cannot preclude the right to litigate an issue central to a statutory violation or deprivation of a property interest." Syl. Pt. 2, *Jordan v. Roberts*, 161 W. Va. 750, 246 S.E.2d 259 (1978). Rule 32(c)(3) of the West Virginia Rules of Criminal Procedure provides that "[b]efore imposing sentence, the court must . . . afford defendant's counsel an opportunity to speak on behalf of the defendant; [and] address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of sentence[.]"

At the second post-trial hearing, the circuit court (which was now the newly elected judge) found that the initial judge had, in essence, bifurcated petitioner's sentencing hearing and that the sentence imposed by the initial judge at the first sentencing hearing was not final. The circuit court then afforded petitioner his right to present mitigating evidence and allocution. Petitioner presented his sex offender evaluation, and the testimony of the evaluator and his mother. Petitioner also testified on his own behalf. Thereafter, petitioner's counsel argued in favor of alternative sentencing. In rendering its decision, the circuit court noted it was influenced by petitioner's post-conviction failure to admit guilt and the questionable validity of his sex offender evaluation, which was wholly dependent on petitioner's honesty. The circuit court then imposed the same sentence

17

imposed by the initial judge: ten to twenty years in prison, plus an additional forty years of extended supervision, and compliance with the requirements of the sex offender registry.

With regard to the granting of a continuance, we have held that it

is a matter within the sound discretion of the trial court, though subject to review, and the refusal thereof is not ground for reversal unless it is made to appear that the court abused its discretion, and that its refusal has worked injury and prejudice to the rights of the party in whose behalf the motion was made.

Syl., in part, *State v. Jones*, 84 W. Va. 85, 99 S.E. 271 (1919) (citations omitted).

Here, the initial judge's denial of petitioner's motion for a continuance could have potentially harmed petitioner's ability to present mitigating evidence and to allocute. However, the process adopted by the initial judge and employed by the newly elected judge effectively cured any concerns because the newly elected judge allowed petitioner to fully proceed with his case at the second hearing under the burden of persuasion employed at the initial hearing. Thus, petitioner cannot show he suffered any injury or prejudice due to the initial judge's denial of his motion to continue.

In his tenth assignment of error, petitioner contends that the circuit court abused its discretion in sentencing him to ten to twenty years in prison without first adequately considering the mitigating factors he presented. We have said, "rulings issued by trial courts, as a rule, must contain the requisite findings of fact and conclusions of law 'to permit meaningful appellate review.' Syl. Pt. 3, in part, *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997)." *State v. Redman*, 213 W. Va. 175, 180, 578 S.E.2d 369, 374 (2003). "Findings of fact, by necessity, include those facts which the circuit court finds relevant, determinative of the issues and undisputed." *Id.* at 178, 578 S.E.2d at 372 (citation omitted). Having reviewed the October 19, 2018, sentencing order, we find that it contains sufficient findings of fact and conclusions of law to permit meaningful appellate review. Accordingly, we find no error.

Finally, in petitioner's eleventh assignment of error, he argues that his ten- to twenty-year prison sentence is disproportionate to the character and degree of his offense, his character and background, and the jury's verdict. *See* Syl. Pt. 8, in part, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980) ("Penalties shall be proportioned to the character and degree of the offence.") Petitioner also claims that his sentence fails the objective test for disproportionality because, if he had not had a familial relationship with Z.V., his sentence would have been one to five years in prison.

Petitioner's ten- to twenty-year sentence does not fail the objective test for disproportionality because petitioner was in a position of trust to Z.V., i.e., he was her stepfather, he lived with Z.V., and, according to S.L's uncontested testimony, he chose not to work outside the home so that he could be a full-time parent to Z.V. and her sister. Petitioner admits that the Legislature increased the penalty for adults who breach their position of trust and sexually abuse a child. Accordingly, we reject petitioner's claim that his sentence is disproportionate to his offenses.

18

Finally, petitioner is subject to the statutory sentence imposed by West Virginia Code § 61-8D-5(a), which directs that a parent, guardian, custodian or person in a position of trust found guilty of sexual abuse of a child "shall be imprisoned in a correctional facility not less than ten nor more than twenty years." "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *Id.* at syl. pt. 3 (citing Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)). Clearly, petitioner's sentence is within statutory limits and he does not claim that the circuit court based his sentence on some impermissible factor. Therefore, we decline to review petitioner's sentencing order.

For the foregoing reasons, we affirm both petitioner's conviction of one count of sexual abuse by a parent, guardian, or custodian, and the April 20, 2018, order sentencing him to ten to twenty years in prison, plus forty years of extended supervision and placement on the sex offender registry for his crime.

Affirmed.

**ISSUED:** November 4, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison